```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------x

MARIUSZ BRULINSKI AND KRYSTIAN
STOLARZ, individually and on behalf
of all other persons similarly                    **MEMORANDUM & ORDER**
situated,                                         22-CV-3238 (EK)(CLP)

                    Plaintiffs,


        -against-


CHATEAU GC, LLC, PROGRESSIVE
MAINTENANCE, LLC, and PRESTIGE
EMPLOYEE ADMINISTRATORS, LLC,

                    Defendants.

---------------------------------------x
```
ERIC KOMITEE, United States District Judge:

        Plaintiffs Mariusz Brulinski and Krystian Stolarz bring this putative class action against their former employers. The case arises from a dispute about the compensation Brulinski and Stolarz received for construction work on publicly funded projects. They allege that the defendants' failure to pay them at the requisite hourly rate violated various federal statutes (including the Fair Labor Standards Act and False Claims Act) and state law.

        Before the Court is the defendants' motion to dismiss. For the reasons set out below, that motion is granted.

## I.  Background

The following facts are taken from the amended complaint, ECF No. 32, and presumed to be true unless otherwise noted.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The named plaintiffs are construction workers who live and work in New York.  Am. Compl. ¶¶ 4, 5, 21.  The defendants are New York business entities.  *Id.* ¶¶ 6-8.  Chateau GC, LLC is a general contractor that provides residential construction and renovation services.  *Id.* ¶ 15.[1]  The plaintiffs worked for the defendant entities on multiple publicly funded construction projects in Brooklyn, including at (1) 1670 Pacific Street, (2) 572 Warren Street, and (3) 360 Nostrand Avenue.  *Id.* ¶ 39.

The Davis-Bacon Act ("DBA") requires contractors on federally funded construction projects to pay employees a prevailing wage, as determined by reference to worker classifications promulgated by the Department of Labor.  40 U.S.C. § 3142.  The DBA was "designed to protect local wage standards by preventing contractors from basing their bids on wages lower than those prevailing in the area."  H. Comm. on

---

[1] Plaintiffs do not describe the nature or conduct of Progressive Maintenance, LLC or Prestige Employee Administrators, LLC with any specificity, other than to say that: (1) Progressive sent the plaintiffs their offers of employment, *id.* ¶ 33; (2) Prestige issued their payments, *id.* ¶ 38; and (3) the "Defendants," collectively, executed employment contracts with the plaintiffs, *id.* ¶ 18, and they "supervised, managed, and / or were responsible for payment of wages to Plaintiffs."  *Id.* ¶ 36.

Educ. & Labor, 87th Cong., *Legislative History of the Davis-Bacon Act* 1 (Comm. Print 1962).

Here, plaintiffs were hired as "[f]looring [i]nstaller[s]" and received $79.21 per hour. Am. Compl. ¶¶ 33, 35. But they allege that this wage relied on an improper DBA classification, and they would have been paid between $95 and $104 per hour if the defendants had classified them properly. *Id.* ¶ 36(c).[2] They also invoke the New York State Prevailing Wage Guidelines ("NYSPW"), as set out in Articles 8-A and 9 of the New York Labor Law ("NYLL"). *Id.* ¶¶ 23-24; *see* NYLL. §§ 226, 231. They list eight different NYSPW wage rates (within four worker classifications) that, they contend, should have applied to them because they performed "different types of duties." Am. Compl. ¶ 36.

Plaintiffs bring seven claims. Their federal claims include (1) a claim for underpayment of wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201; Am. Compl. ¶¶ 128-42; (2) a claim under the False Claims Act, 31 U.S.C. § 3729; Am. Compl. ¶¶ 149-60; and (3) a claim for a declaratory judgment pursuant to 28 U.S.C. §§ 2201-02, Am. Compl. ¶¶ 161-63. Plaintiffs also assert four state-law claims, for (1) breach of

---

[2] Plaintiffs allege they should have been classified as "Carpenter[s] (Building and Residential)," "Carpenter[s] — Timberm[e]n," or "Tile Layer[s]" — classifications with prevailing wages from $95 to $104 per hour. Am. Compl. ¶ 36(c). The complaint does not indicate which plaintiffs — named or unnamed — should have been paid according to each of these classifications.

3

contract; (2) relief as "Third Party Beneficiaries of State Prevailing Wage Contracts;" (3) unpaid wages under the New York Labor Law; and (4) quantum meruit.  They seek to prosecute a collective action on behalf of themselves and all others similarly situated.  Am. Compl. ¶¶ 93-97.

The federal claims must be dismissed for the reasons set forth below.  Given that, the Court will decline supplemental jurisdiction over the state-law claims.

## II.  Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.[3]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiffs' favor.  *See Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013).  At the same time, the Court is "not bound to accept as true a legal

---

[3] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

4

conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

### III. Discussion

**A.    The Complaint Fails to State a Claim under the FLSA**

Plaintiffs' FLSA claim is not a model of clarity. In a classic example of shotgun pleading, they cite virtually every provision in the statute.[4]

Nevertheless, the Court understands the plaintiffs to allege a violation of the FLSA's minimum-wage requirement. *See* Am. Compl. ¶ 134 (citing 29 U.S.C. § 215(a), which prohibits violations of 29 U.S.C. § 206, the FLSA minimum wage provision).[5] This is because the FLSA claim is premised on the defendants' alleged failure to pay the plaintiffs "proper wages." *Id.* ¶ 132. Indeed, the complaint's *factual recitations* focus primarily on the wage rate that the plaintiffs allege they should have received, *see, e.g., id.* ¶¶ 23, 36-37, rather than on the number of hours worked, faulty recordkeeping, or child labor issues (which would fall under other FLSA provisions cited in the complaint). Importantly, the plaintiffs do not allege

---

[4] *See* Am. Compl. ¶ 134 (alleging violations of "FLSA 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. § 207(a)(1) and § 215(a), as well as 29 U.S.C. §§ 201 *et seq.*, including 20 U.S.C. § 211(c) and § 255(a)").

[5] The complaint also cites 20 U.S.C. § 207, which governs overtime pay. Am. Compl. ¶ 134. But the complaint simultaneously alleges that no plaintiff worked overtime. *Id.* ¶ 45 ("Plaintiffs did not work overtime."). The Court therefore does not read the complaint to allege a violation of Section 207. *Lundy*, 711 F.3d at 114 ("In order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours.").

that the defendants failed to pay the federal *minimum* wage, but rather the federal and state *prevailing* wages (as set forth in the DBA and NYSPW).

The FLSA claim fails for the reasons set out below.

1. Plaintiffs Cannot State an FLSA Claim Based on the DBA

To the extent the plaintiffs' FLSA claim is predicated on their alleged misclassification under the DBA, it cannot survive.

The DBA does not provide a private right of action. *Chan v. City of New York,* 1 F.3d 96, 102 (2d Cir. 1993). Instead, it is "enforced administratively by the contracting federal agency and the [Department of Labor]." *United States ex rel. Krol v. Arch Ins. Co.*, 46 F. Supp. 3d 347, 350 (S.D.N.Y. 2014). To surmount this obstacle, the plaintiffs attempt to shoehorn their alleged DBA misclassification into an FLSA claim.

This strategy is impermissible. A plaintiff cannot use the FLSA to "circumvent" the DBA's administrative enforcement mechanism. *Grochowski v. Phoenix Const.*, 318 F.3d 80, 87 (2d Cir. 2003). Indeed, the FLSA "does not address liability for underpayment of hours at prevailing wage rates" at all. *Id.*; *see also Sobczak v. AWL Indus. Inc.*, 540 F. Supp. 2d 354, 360 (E.D.N.Y. 2007) (citing *Grochowski*). Under the DBA, "an aggrieved employee is limited to those administrative

6

[enforcement] mechanisms set forth in the text of the statute." *Grochowski*, 318 F.3d at 87.  Accordingly, the plaintiffs' FLSA claim — to the extent it is premised on the allegation that the plaintiffs were not paid proper prevailing wages under the DBA — is dismissed.  *Id.*

    2.    Plaintiffs Fail to State an FLSA Claim Based on State-Law Prevailing Wages

Plaintiffs alternatively assert that they were underpaid relative to the NYSPW.  Am. Compl. ¶ 36(a)-(b).  This does not save their FLSA claim.

To be sure, at least one district court has held that *Grochowski* does not preclude an FLSA claim based on the state (rather than federal) prevailing wage.  *See Sobczak*, 540 F. Supp. 2d at 360-61.  In *Sobczak*, the court relied on the fact that the New York prevailing wage law, unlike the DBA, allows a private right of action as well as administrative enforcement.  *Id.*

But *Sobczak* was about the FLSA's *overtime* provision, and therefore does not apply in a case where, as here, plaintiffs have expressly disclaimed overtime work.  Am. Compl. ¶ 45.  The FLSA requires overtime pay at one-and-a-half times the "regular rate" of payment.  29 U.S.C. § 207(a)(1).  And the *Sobczak* court held that one could determine this "regular rate" by reference to a state prevailing wage.  540 F. Supp. 2d at

7

358-61. The minimum-wage provision of the FLSA, however, never mentions a "regular rate" of payment. Instead, it sets a concrete minimum wage of $7.25 an hour. 29 U.S.C. § 206(a)(1). So, while the overtime provision leaves the benchmark wage rate ambiguous, and thereby creates space for state law to fill the gap, the minimum-wage provision contains no such ambiguity and leaves no such gap. That means that *Sobczak*'s reasoning does not apply here, even if (as we assume) its holding is a correct statement of law.

In any event, the plaintiffs have not plausibly alleged that state law should apply to the relevant contracts at all. The complaint alleges that the projects at issue were "publicly financed projects, *i.e.* city, state and federal projects," Am. Compl. ¶ 16, or "publicly financed projects covered by the provisions of New York Labor Law and various federal laws." *Id.* ¶ 18. But it never specifies which government entity funded which projects. So, the assertion that New York's prevailing wages should have applied to these contracts, see *id.* ¶ 23, 27, 36, is a "conclusory allegation[]" or a "legal conclusion[] masquerading as [a] factual conclusion[]" — neither of which the Court need accept on a motion to dismiss. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

8

The fact that the complaint itself described the relevant projects as *federally* funded reinforces the Court's conclusion.  For example, the complaint states that "most, if not all, of [the relevant] job sites were Section 8 housing projects."  Am. Compl. ¶ 39.  Section 8 is a federal program.  *People's Hous. Dev. Corp. v. City of Poughkeepsie*, 425 F. Supp. 482, 485 (S.D.N.Y. 1976).  Thus, as in *Grochowski*, "the present contracts between the defendants and the [New York City Housing Authority] were federally funded and, as such, are governed by the prevailing wage requirements set forth in the DBA, not by [Section] 220 of the [NYLL]."  318 F.3d at 86.  Indeed, the complaint admits as much, pleading that the "[d]efendants are subject to the Davis-Bacon Act . . . for certain and / or all project worksites."  Am. Compl. ¶ 152.[6]  Plaintiffs' generic invocation of state law cannot suffice to state an FLSA minimum-wage claim.

---

[6] Although the plaintiffs do not attach the contracts underlying this dispute to the complaint, the defendants have attached to their briefing contracts for the three New York City Housing Authority ("NYCHA") projects identified in paragraph thirty-nine of the complaint.  *See* Mot. to Dismiss, Exs. 1-3, ECF Nos. 43-2, 43-3, 43-3.  The contracts clearly identify the projects as federally funded.  *Id.*  The defendants have also attached a supplemental agreement stating that the Davis-Bacon Act applies to the NYCHA Section 8 housing contracts.  Mot. to Dismiss, Ex. 4, at 3, ECF No. 43-4.  Because the complaint "relies heavily upon [the] terms and effect" of these contracts, they are properly considered "integral to the complaint" such that they may be considered on a motion to dismiss.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  Plaintiffs do not contest the validity or authenticity of these contracts in their opposition.

9

**B.     The False Claims Act Count is Dismissed**

The False Claims Act ("FCA") establishes liability for anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A), or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." *Id.* § 3729(a)(1)(B). The statute permits a private party — a relator — to file a *qui tam* action challenging fraudulent claims on the government's behalf. *United States ex rel. Wood v. Allergan, Inc.*, 899 F.3d 163, 166 (2d Cir. 2018). Plaintiffs' FCA claim fails because they did not satisfy the procedural requirements for filing a *qui tam* FCA action, *and* because they did not plead their FCA claim with particularity.

1. Plaintiffs Failed to Follow the FCA's Procedural Requirements

The FCA establishes procedures that relators must follow before stepping into the government's shoes. Among other things, relators must serve a "copy of the complaint and written disclosure of substantially all material evidence and information the person possesses" on the government, which can then decide whether to intervene in the case. 31 U.S.C. § 3730(b)(2). The relator must also file the complaint "in camera, [and] under seal for at least 60 days" — "not [to] be served on the defendant until the court so orders." *Id.*

10

These requirements serve several purposes. First, they give the government time to determine whether to intervene. *United States ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995, 998-99 (2d Cir. 1995). Second, they "prevent defendants from having to answer the complaints without knowing whether the government or relators would pursue the litigation." *Id.* at 999. Third, they permit a defendant to seek a "speedy and valuable settlement with the government" before the underlying allegations become public. *Id.*

A relator's "failure to comply with the [FCA's] filing and service provisions" requires dismissal with prejudice, because such failure "irreversibly frustrates the congressional goals underlying" the statute. *Id.* at 1000. Here, the plaintiffs concede that they did not follow these procedural requirements. *See* Pls.' Mem. in Opp'n to Mot. to Dismiss 2, 15-16, ECF No. 43-6. The original complaint was neither filed under seal nor initially served on the government. *Id.* at 15. While the plaintiffs ultimately did serve the original and amended complaints on the government, this occurred only after the defendants were involved in the case. *Id.* So, the FCA claim is dismissed with prejudice.

### 2. Plaintiffs Did Not Plead their FCA Claim with <u>Specificity</u>

Even if the plaintiffs had complied with the FCA's procedural requirements (which they did not), their claim would still fail for want of specificity under Federal Rule of Civil Procedure 9(b).

FCA claims are subject to the specificity requirements of Rule 9(b). *Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475, 1476-77 (2d Cir. 1995); *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 26 (2d Cir. 2016). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party [] state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy this Rule, a complaint alleging fraud must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Exelis*, 824 F.3d at 25.

The amended complaint does not comport with Rule 9(b). It alleges only that (1) "Defendants submitted fraudulent and / or false certified payrolls and Certificates of Compliance with the intention that the false documents be material to the Government's decision to pay and / or approve Defendants' (false) claims for payment," Am. Compl. ¶ 156; and (2) "Defendants failed to comply with the obligations imposed by the

12

Davis-Bacon Act and thereby violated the FCA by failing to pay Plaintiffs and all others . . . the required wages per the correct worker classification." *Id.* ¶ 157. These allegations do not identify which defendants made the challenged claims, which government entity received them, when or where the claims were made, which representations were false, or why they were false. "[A] relator cannot circumscribe the Rule 9(b) pleading requirements by alleging a fraudulent scheme in detail and concluding, that as a result of the fraudulent scheme, false claims must have been submitted." *United States ex rel. Polansky v. Pfizer, Inc.*, No. 04-CV-704, 2009 WL 1456582, at *5 (E.D.N.Y. May 22, 2009). This is nevertheless the approach that the complaint takes.

Finally, to the extent the plaintiffs intended to marshal their alleged *misclassification* as the false claim at issue, that cause of action, too, would fail. Many courts have ruled that the Department of Labor has "*sole* jurisdiction to determine whether a laborer was properly classified." *Krol*, 46 F. Supp. 3d at 354; *see also United States v. Dan Caputo Co.*, 152 F.3d 1060, 1062 (9th Cir. 1998) ("Regulations under the Davis-Bacon Act set forth procedures for the administrative resolution of classification disputes . . . . Accordingly, deferral to the [Department of Labor] with respect to classification determinations is proper under the doctrine of

13

primary jurisdiction."); *United States ex rel. Windsor v. DynCorp, Inc.*, 895 F.Supp. 844, 852 (E.D. Va. 1995) ("[T]he Department of Labor has sole responsibility for resolving classification disputes under the Davis-Bacon Act . . . ."). This, too, warrants dismissal of the FCA claim.

### C. The Declaratory Judgment Claim is Dismissed as Duplicative

The plaintiffs also seek a declaration that "the practices complained of [in the Amended Complaint] are unlawful" under the FLSA, NYLL, and FCA. Am. Compl. ¶ 163. They are not entitled to such a declaration.

The Declaratory Judgment Act ("DJA") "created an opportunity, rather than a duty, to grant [declaratory] relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). In deciding whether to grant a declaratory judgment, a court must consider "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005). Courts may also consider other factors, such as "whether there is a better or more effective remedy" than a declaratory judgment. *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 360 (2d Cir. 2003).

The plaintiffs essentially seek a declaration that they are entitled to relief under the FLSA, NYLL, and FCA. However, "a declaratory judgment will not serve a useful purpose when the claim is duplicative of another claim in the same action." *MSR Tr. v. Nationstar Mortg. LLC*, No. 21-CV-3089, 2022 WL 3441613 (S.D.N.Y. July 28, 2022) (collecting cases), *report and recommendation adopted*, 2022 WL 17689839 (S.D.N.Y. Dec. 15, 2022); *City of Perry, Iowa v. Procter & Gamble Co.*, 188 F. Supp. 3d 276, 286 (S.D.N.Y. 2016) ("Courts generally reject a DJA claim when other claims in the suit will resolve the same issues."). Because the declaratory judgment claim raises no issues distinct from those in the preceding claims, it is dismissed as duplicative.

### D. Supplemental Jurisdiction Over the State Law Claims Is Declined

The plaintiffs rely solely on the Court's federal-question jurisdiction. And the federal claims in this case have been dismissed. So, the Court will not exercise supplemental jurisdiction over the state-law claims. *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 31–32 (2025). Those claims are dismissed without prejudice.

### IV. Conclusion

For the foregoing reasons, the motion to dismiss is granted. The FCA claim is dismissed with prejudice, while the

15

remaining federal claims are dismissed without prejudice.  The state-law claims are also dismissed without prejudice.  The Clerk of Court is respectfully directed to enter judgment and close this case.

       SO ORDERED.


                                                 /s/ Eric Komitee
                                          ERIC KOMITEE
                                          United States District Judge


Dated:    September 28, 2025
            Brooklyn, New York